McKxnNey, J.,
delivered tbe opinion of the court.
On tbe 4th of March, 1850, tbe complainant and Benjamin Peck, tbe defendants’ testator, entered into a contract in writing, under seal, tbe substance of which. is, that said Peck, on that day, JvirecL to tbe complainant a slave named Peter, for tbe period of twelve months, at eight dollars per month. Then follows this stipulation: “ If tbe said Simpson sees proper at tbe end, or any time during tbe year, to give tbe said Peck two hundred dollars, be, tbe said Peck, binds himself to make to tbe said Simpson a good and sufficient bill of sale to him, tbe said Peter, during bis natural life; and is not to receive any thing for tbe hire of said negro man, Peter, for what time be may have worked with him, tbe said Simpson. But if be, tbe said Simpson, prefers to pay tbe hire of said negro man, Peter, be is to' pay tbe said Peck nine *55 ty-six dollars, payable quarterly, and return unto the said Peck said negro man, Peter, at tlie end of tbe year.”
It appears that said Benjamin Peck died in October, 1850, and the complainant, in his bill, alleges that after the death of Peck, and within the year, he made known to the executors his election to purchase the slave on the terms set forth in the foregoing contract, as he had also done to the testator in his life-time. The bill further alleges, that at the expiration of the year, namely, on the 4th day of Harch, 1851, the complainant repeated to said executors his determination to take said slave at the stipulated price, to which they both assented, and agreed to meet complainant at the late residence of the testator, on the next morning, when he was to pay the balance of the purchase money; and they were to execute to him a bill of sale for said slave. And that he accordingly attended the next morning at the place designated, tendered the money, and demanded a bill of sale for the slave, but the defendants refused to complete the contract.
The defendants substantially admit the agreement on their part, as set forth in the bill; but assert that, owing to their pressing engagements elsewhere, a precise time in the morning had been mutually agreed upon between them and the complainant, for the meeting and completion of the contract, and that they waited at the place fixed until after the expiration of the time agreed on, but the complainant failed to attend until after one of the defendants had been compelled to leave.
The bill seeks a specific execution of the contract, and the Chancellor so decreed.
In considering this cause, we leave out of view altogether as well the allegations of the answer as the proof, and, taking the case as presented in the bill, we will pro *56 ceed to inquire whether the complainant has made out a case entitling him, as against the defendants, to a specific execution of the contract.
It seems to be conceded, that the complainant was bound to make his election within the year, whether to hold the slave under the contract of hiring, or to become purchaser; and that, excluding the day of the contract, the year ended on the 4th of March, 1851; on which day, by the terms of the written contract between the testator and the complainant, it was incumbent on the latter not only to have made known to the executors his election to purchase the slave, but likewise to have tendered to them the purchase money; and that his neglect to do so, on that day, put an end to his right to become purchaser of the slave. But, conceding all this, it is assumed that the verbal agreement of the executors to prolong the time for the payment of the money and the completion of the contract beyond the end of the year, was a valid contract, and had the effect to save, the right of the complainant to purchase the slave. This assumption, however correct, as respects persons acting in their own right, and dealing in reference to their own property, is, we think, wholly mistaken as respects the defendants acting in the capacity of executors. The failure of the complainant to perfect his right of purchase, within the year, being an absolute determination of such right, the consequence was, that at the instant of time that right was forfeited, the slave became the absolute property of the estate. This being so, the agreement of the executors to extend the time for carrying the contract of purchase into effect, to a period after the expiration of the year, was an agreement which, under our law, they perhaps had no authority to make, and certainly an agreement not proper for *57 a court of chancery to decree the specific execution of; because it was, in effect, an agreement for the sale of the slave, not in execution of the written contract made with the testator, but by force of the verbal contract of the executors.
This agreement of the executors, if allowed to have effect, would countervail the policy and provisions of the Act of 1827, ch. 61, §§ 1, 2, which declares all sales of simes void, made by executors or administrators, unless directed by will, or by the decree of some court empowered, in proper eases, to order a sale.
Tire decree will be reversed and the bill be dismissed, but without costs.